DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: 08050094 |
| ) | |
| Waste Management of Illinois, Inc.; ) | |
| Waste Management of Wisconsin, Inc.; ) | |
| and Ecolab, Inc., ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OF LAW IN SUPPORT OF REGAL-BELOIT
CORPORATION'S MOTION TO INTERVENE

Regal-Beloit Corporation ("Regal-Beloit") seeks intervention as a defendant in the above-captioned matter. This matter was brought pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§9606, 9607, and 9613(g)(2).

I.  **Factual Background**

The subject of this lawsuit is the clean-up of the Evergreen Manor Superfund Site in Roscoe, Illinois. The contamination involves a plume of groundwater in which the hazardous substances trichlorethene and trichlorethane were detected at levels above groundwater drinking standards. The contaminated groundwater was detected in residential drinking wells prompting action by the United States Environmental Protection Agency ("U.S. EPA") under CERCLA.

The U.S. EPA identified Potentially Responsible Parties, ("PRPs"), including Waste Management, Inc. ("Waste Management"), Ecolab, Inc. ("Ecolab"), and Regal-Beloit Corporation ("Regal-Beloit"). In April 1999, the U.S. EPA entered into an Administrative Order

1

on Consent with the three PRPs, including Regal-Beloit, and the State of Illinois pursuant to which the three PRPs agreed to pay $2.1 million to fund the costs of connecting the affected residences to the North Park Public Water District. Regal-Beloit satisfied its obligation under the Administrative Order on Consent.

Subsequent to this Administrative Order on Consent, Regal-Beloit completed an environmental investigation whose outcome stated that Regal-Beloit could not have contributed to the contamination of the Evergreen groundwater plume. (Schneier Aff., para. 4). Based on this new information, Regal-Beloit presented its non-responsibility case to the United States, and informed the United States that it would not participate further in the clean-up of a groundwater plume for which Regal-Beloit was not responsible. (Schneier Aff., para. 5). However, Regal-Beloit's position fell on deaf ears and the United States sued Regal-Beloit in Northern District of Illinois Case No. 07CV50002 for response costs pursuant to CERCLA. (Schneier Aff., para. 6).

In the meantime, the United States continued to negotiate a settlement with the other PRPs Ecolab and Waste Management, which led to the documents filed May 29, 2008: Complaint; Notice of Lodging of Proposed Consent Decree Pending Solicitation of Public Comment by U.S. Department of Justice; and the Consent Decree for Remedial Action and Cost Recovery Evergreen Manor Groundwater Site, Roscoe, Illinois. Once effective, the proposed consent decree will bar Regal-Beloit's ability to pursue contribution against the other PRPs.

## II.    ARGUMENT

### A. The Federal Rules Mandate that Regal-Beloit be Permitted to Intervene

Fed. R. Civ. P. 24(a) provides parties with a right to intervene in certain circumstances. Specifically, it provides:

(a)    On timely motion, the court must permit anyone to intervene who:

>   (1)   is given an unconditional right to intervene by a federal statute; or
>
>   (2)   claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impeded the movants ability to protect its interest, unless existing parties adequately represent that interest.

First, a federal statute does give Regal-Beloit the unconditional right to intervene pursuant to Rule 24(a)(1). Title 42 U.S.C. § 9613 (i) grants Regal-Beloit this right as follows:

> [A]ny person may intervene as a matter of right when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest, unless the President or the State shows that the person's interest is adequately represented by existing parties.

It is a cardinal rule of statutory construction that courts first look to the language of the statute. *Grzan v. Charter Hosp. of Northwest Ind.*, 104 F.3d 116, 122 (7th Cir.1997). Where the language of the statute is plain on its face, the court must assume that is plain meaning accurately expresses its legislative purpose. *Id.* Pursuant to the clear and unambiguous "any person" language of this section, as long as Regal-Beloit demonstrates an interest in the subject of the action and disposition of the action may impair or impede its ability to protect that interest, it has an unconditional right to intervene.

>   **B.   Regal-Beloit has an Interest in the Subject Matter of the Action because Regal-Beloit's Right to Contribution from Other PRPs will be Extinguished if the Proposed Consent Decree is Entered.**

Second, Regal-Beloit has an interest in the subject of this action that will be impaired if it is not permitted to intervene and is thus entitled to intervene under Fed. R. Civ. P. Rule 24(a)(2) and U.S.C. § 9613(i).[1] CERCLA gives Regal-Beloit the right to seek contribution from other

---

[1] Fed. R.C.P. 24 and 42 U.S.C. § 9613(i) provide parallel grounds for intervention, although the burden on showing that the intervenor's interest is not adequately represented by existing parties under Rule 24 is on     the intervenor rather than the person opposing the intervention. See *U.S. v. Alcan Aluminum,*

3

PRPs if it pays more than its fair share of the cleanup. 42 U.S.C. § 9613(f)(1). However, if the proposed consent decree is entered, Regal-Beloit's statutory right to contribution is foreclosed. 42 U.S.C. § 9613(f)(2). *See U.S. v. Davis*, 11 F. Supp. 2d 183, 189 (D.R.I. 1998)(wherein court stated "Court approval also significantly impacts the rights of non-settling PRP's [sic] because it bars them from asserting contribution claims against the settling PRP's [sic].").

There are several considerations to be undertaken by the court before approval of a consent decree including: 1) whether the process for reaching the settlement was procedurally fair; 2) whether the terms of the settlement are substantively fair; 3) whether the settlement is reasonable; and 4) whether the proposed settlement is consistent with the statutory goals of CERCLA. *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 85 (1st Cir. 1990). Regal-Beloit's position, that the terms of the settlement meet none of the above-criteria, is not represented by any party currently in the action. Clearly, because all current parties to the action are also parties to the agreement, they all have an interest in seeing the agreement consummated. Thus, none of the existing parties to the lawsuit can adequately represent Regal-Beloit's interests and in fact stand in complete opposition to Regal-Beloit's interests.

The approval process of a consent decree is not a mere formality. As the court in *Davis* stated: "The Court does not serve simply as a rubber stamp that automatically places its imprimatur on the proposed settlement. Rather, the Court must make an independent judgment as to whether the proposed settlement is fair and reasonable." 11 F.Supp.2d at 189.

The first factor to be considered by the court, whether the process leading to settlement was procedurally fair involves a determination as to whether the negotiation process was fair, open and whether there was bargaining balance. *Id.* In *Davis* the court found that the

---

Inc., 25 F.3d 1174, 1181 (3d Cir. 1994), ("Because of their similarity, courts apply essentially the same test when determining whether to grant an application for intervention under both Rule 24(a) and § 113(i).").

negotiations were conducted openly, all parties were given an opportunity to participate and the United States acted in good faith. *Id.* Here, Regal-Beloit posits that it was not given a fair opportunity to participate and in fact the United States did not act in good faith. The United States neither commented on, nor negotiated with Regal-Beloit after Regal-Beloit made its good faith presentation as to its non-responsibility. Essentially, the United States left the bargaining table and told Regal-Beloit it would see the company in court. Subsequently, the United States went to the other two PRPs, Waste Management and Ecolab and offered them a lower allocation of liability as a way to teach Regal-Beloit a lesson that it should not attempt to assert its rights or it will suffer the lion's share of the liability. That lower allocation of liability to Waste Management and Ecolab is reflected in the "sweetheart deal" set forth in the consent decree, where the two parties that Regal-Beloit asserts have a greater share of the responsibility for contamination, together pay for less than ½ of the costs the government is seeking to reclaim.

The second factor the court is to consider is whether the consent decree embodies substantial fairness. In *Davis*, the court stated that: "The benchmark for determining substantive fairness is the principle of accountability which holds that each party should bear the cost for the harm for which it is legally responsible." (internal quotation marks and citations omitted.) *Id.* at 189. Thus, the Davis court concluded, the settlement terms must be based on and roughly correlated with a measure of comparative fault. *Id.* at 189-190. Here, the U.S. EPA cannot demonstrate that its settlement agreement with Ecolab and Waste Management is correlated with any measure of comparative fault. In fact, Regal-Beloit asserts that the government allocated a lower share of the liability to Ecolab and Waste Management for the sole purpose of punishing Regal-Beloit for its "audacity" to challenge the government's designation of it as a PRP.

5

Reasonableness is the third factor the court is to consider when determining whether to approve a proposed consent decree. Under CERCLA, reasonableness is determined by whether the decree provides for an efficient clean-up and adequately compensates the public for its costs, in light of the foreseeable risks of loss. Regal-Beloit asserts that the low allocation of response costs to the only two remaining PRPs unreasonably jeopardizes the compensation to the public for its costs. Regal-Beloit's maintains it has a high potential to prevail on the U.S. case against it on the grounds of its strong technical and legal arguments concerning its non-responsibility. Assuming Regal-Beloit is right, the wide gap between what the government ought to be seeking from the remaining two PRPs and what is proposed brings into question the reasonableness of the proposed consent decree.

The final factor the court is to consider is whether the proposed consent decree is consistent with CERCLA's overriding goal of promptly and efficiently cleaning up a hazardous waste site. Regal-Beloit posits that this last factor is a non-factor in this case because either all or a substantial portion of the contaminants have already naturally attenuated to levels below drinking water standards, the affected residences were already supplied with an alternative drinking water source, and the government has no further cleanup plans.

Because only Regal-Beloit has an interest in the court's specific consideration of the pertinent factors outlined above, the important interests it has at stake cannot be represented adequately by any of the existing parties to the action.

C.  **Non-Settling Parties have a Right to Intervene as Established in Case Law**

Third, many courts have decided that non-settling PRPs such as Regal-Beloit have a right to intervene to challenge a proposed consent decree between the United States and other PRPs. *See e.g. U.S. v. Acton Corp.*, 113 F.R.D. 431 (D. N.J. 1990); *U.S. v. Alcan Aluminum, Inc.*, 25

F.3d 1174 (3rd Cir. 1994); *U.S. v. Union Elec. Co.*, 64 F.3d 1152 (8th Cir. 1995); *U.S. v. City of Glen Cove*, 221 F.R.D. 370 (E.D. N.Y. 2004).

For example, in *U.S. v. Acton Corp.*, 131 F.R.D. 431, 435 (D. N.J. 1990), the District Court permitted intervention by a non-settling PRP holding that the statutory right to contribution that could be extinguished by the consent decree entitled them to intervene and that the ability to submit public comments about a proposed consent decree did not negate the intervenor's claim for intervention as of right.

In *U.S. v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1178 (3rd Cir. 1994), the court held that, as long as the earlier consent decree and the later consent decree addressed similar issues, an early settling PRP could intervene in an action wherein the United States sought approval of a consent decree for a settlement agreement with a later settlor that would have affected the early settlor's contribution rights.

The Court of Appeals in *U.S. v. Union Elec. Co*, 64 F.3d 1152, 1171 (8th Cir. 1995) found that a non-settling party had a right to intervene to challenge a proposed consent decree between the U.S. and other PRPs. The court rejected the notion that the right to comment prior to filing of the proposed consent decree adequately protected the non-settling PRPs' interests in the litigation. *Id.* at 1169.

Similarly, in *U.S. v. City of Glen Cove*, 221 F.R.D. 370, 374 (E.D.N.Y. 2004), the District Court determined that the intervenor's contribution interest was adequate to sustain intervention in a case with several PRPs. The court also determined that CERCLA's public review and comment process did not adequately protect the non-settling PRPs' rights. *Id.*

Regal-Beloit acknowledges that some courts have denied intervention under certain circumstances. Nevertheless, as illustrated in the following cases, the courts have denied intervention for reasons not applicable in the case at bar.

In *U.S. v. Mid-State Disposal, Inc.,* 131 F.R.D. 573, 577 (W.D. Wis. 1990), the District Court decided that a motion to intervene filed just prior to entry of a consent decree in a CERCLA action by parties who had withdrawn from settlement negotiations was untimely, would have rendered settlement negotiations a waste of time and stalled implementation of a remedy designed to benefit public health and safety at hazardous waste site.

However, unlike the intervenor in *Mid-State Disposal, Inc.*, in the present case, the United States will not dispute that Regal-Beloit has engaged in recent settlement discussions with the United States just before the Proposed Consent Decree was filed. Moreover, as explained above, Regal-Beloit's motion is timely and within the public comment period.

In *City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 824 F.2d 531, 537 (7th Cir. 1987), the Court of Appeals found that the District Court properly exercised its discretion in denying intervention to a public interest group that opposed the entry of a consent decree to clean up a hazardous waste site. The Court found that an unacceptably long period of time had elapsed between when the intervenor knew of an interest that may be affected and the motion to intervene, when the motion to intervene was filed eleven months after the beginning of settlement discussions and years after the suit was filed. *Id.* at 535. *City of Bloomington* is also highly distinguishable on its facts since it involved both untimely intervention and intervention by a public interest group, as opposed to a PRP, whose rights are directly affected by a proposed decree.

As many courts allow intervention and cases denying intervention are highly distinguishable both legally and factually, Regal-Beloit should be allowed to intervene

### D. Regal-Beloit's Motion to Intervene is Timely

Fourth, there is no question as to whether Regal-Beloit's Motion to Intervene is timely as it is moving to intervene within the 30 day period afforded for public comment per the Notice of Lodging of Proposed Consent Decree Pending Solicitation of Public Comment by U.S. Department of Justice.

Moreover, in *Heartwood, Inc. v. U.S. Forest Service, Inc.* 316 F.3d 694 (7th Cir. 2003), the court enumerated the following factors as those to consider regarding whether intervention is timely sought: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; and (4) any other unusual circumstance. *Id.* at 701.

In the subject case, Regal-Beloit has promptly acted to intervene from when it first learned of the proposed settlement less than a month ago. Therefore, there has been no delay. In addition, one of the *Heartwood* factors requires considering the prejudice that would be caused to the intervenor, Regal-Beloit, if the motion is denied. For the reasons expressed above, Regal-Beloit would be greatly prejudiced if not allowed to intervene and must be allowed to intervene.

### E. Regal-Beloit Also Meets The Statutory Requirements For Permissive Intervention.

Finally, Fed. R. Civ. P. 24 (b) provides parties with a right to intervene under certain circumstances and states that permissive intervention is allowed:

(b) (1) In General.

On timely motion, the court may permit anyone to intervene who:

(A) is given a conditional right to intervene by a federal statute; or

9

(B) has a claim or defense that shares with the main action a common question of law or fact.

As noted above, Regal- Beloit is given a right to intervene pursuant to federal statute 42 U.S.C. § 9613 (i). As a result, Regal-Beloit should be allowed to permissively intervene per Fed. R. Civ. P. 24 (b)(1)(A).

Regal-Beloit should also be permitted to timely intervene per Fed. R. Civ. P. 24 (b)(1)(B), as Regal-Beloit undoubtedly has claims and defenses that share common questions of law and fact with the underlying action as well as the pending case, Civil Action No. 07CV50002. The Consent Decree for Remedial Action and Cost Recovery Evergreen Manor Groundwater Site, Roscoe, Illinois, and related filings, all directly relate to and stem from the legal and factual issues in dispute between the PRPs and the United States for over a decade. The effect of the Proposed Consent Decree is to completely prevent Regal-Beloit for pursuing claims and defenses, including actions for contribution, related to the only remaining PRPs. Therefore, Regal-Beloit should be permitted to intervene.

### III.　CONCLUSION

Regal-Beloit is entitled to intervention under: Fed. R. Civ. P. 24(a)(1); Fed. R. Civ. P. 24(a)(2); Fed. R. Civ. P. 24 (b)(1)(A); Fed. R. Civ. P. 24 (b)(1)(B); 42 U.S.C. § 9613 (i); and case law on point. Regal-Beloit has timely filed its Motion to Intervene.

For all the reasons stated above, the Court should grant Regal-Beloit's Motion to Intervene as a defendant in this matter.

Respectfully submitted,

Dated this 27th day of June, 2008.

/s/ *Richard Porter*

Richard H. Porter
State Bar No. 1015230
Attorneys for Regal-Beloit Corporation
GONZALEZ SAGGIO & HARLAN LLP
225 E. Michigan Street
Fourth Floor
Milwaukee, Wisconsin 53202
Phone: 414.277.8500
Fax: 414.277.8521

DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 08050094 |
| | ) | |
| Waste Management of Illinois, Inc.; | ) | |
| Waste Management of Wisconsin, Inc.; | ) | |
| and Ecolab, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

AFFIDAVIT OF SCOTT SCHNEIER

STATE OF WISCONSIN   )
                     )  ss.
ROCK COUNTY          )

I, Scott Schneier, being first duly sworn on oath, depose and state as follows:

1. I am the Vice President of Environmental, Health, Safety, and Risk Management for Regal-Beloit Corporation.

2. I am authorized to make this affidavit on behalf of Regal-Beloit Corporation.

3. I have personal knowledge of the facts set forth below.

4. Subsequent to the entry of the 1999 Administrative Order on Consent in which Regal-Beloit participated, Regal-Beloit completed an environmental investigation whose outcome stated that Regal-Beloit could not have contributed to the contamination of the Evergreen groundwater plume.

5. Based on the new information, Regal-Beloit presented its non-responsibility case to the United States and informed the United States that it would not participate further in the clean-up of a groundwater plume for which it was not responsible.

6. Regal-Beloit's position fell on deaf ears, and rather than continuing to negotiate or otherwise respond to Regal-Beloit's position, the United States sued Regal-Beloit in the Northern District of Illinois Case No. 07CV50002 for response costs pursuant to CERCLA.

7. Further your affiant sayeth not.

*Scott Schneier* (signature)

Scott Schneier, Vice-President Environmental, Health, Safety, and Risk Management, Regal-Beloit Corporation.

Subscribed and sworn to before me by
this 27th day of June, 2008.

*Cynthia M Saunders* (signature)
Notary Public, State of Wisconsin
My commission: 9/26/10

```
CYNTHIA M. SAUNDERS
   NOTARY PUBLIC
STATE OF WISCONSIN
```